## STATE v. THOMAS SMITH.

(Decided May 29, 1900.)

*Homicide—Premeditation—Scintilla of Evidence.*

1. Where there is evidence, more than a *scintilla* on the part of the State, going to show premeditation and deliberation on the part of the prisoner, indicted for murder, it is for the jury to pass upon the guilt of the prisoner, and the degree, if guilty.

2. The credibility of the witnesses and the weight of the evidence are for the jury, and not for the appellate court, although it may differ from the jury as to the weight of the evidence, where it is conflicting.

INDICTMENT for murder, tried before *Hoke, J.,* at January Term, 1900, of WAYNE Superior Court. The prisoner was indicted for murder of Charles Lewis Cawthorne in Johnston

County.    Former trial reported in 125 N. C., 615.    A new trial having been granted, his Honor for reasons satisfactory to himself moved the trial to Wayne County, where the prisoner was again convicted of murder in the first degree. The killing was admitted—the testimony of the prisoner tended to show justification, certainly not more than manslaughter, while that of the State tended to show premeditation and deliberation on the part of the prisoner.  There was no exception to the evidence or charge of his Honor, except as to his refusal to give the special instruction referred to in the opinion.    Prisoner excepted.    Verdict of guilty of murder in the first degree.    Sentence of death.    Appeal by the prisoner.

*Attorney-General,* for the State.
*Messrs. Argo & Snow,* for appellant.

MONTGOMERY, J.    The prisoner was convicted of the murder in the first degree of Charles Lewis Cawthorne at August Term, 1899, of Johnston Superior Court.    He appealed from the judgment, and this Court at September Term, 1899, ordered a new trial (125 N. C., 615).    At November Term, 1899, of the Superior Court, the cause was removed to the county of Wayne for trial, and at the March Term, 1900, of that court the prisoner was tried and convicted again of murder in the first degree.    There was no objection made by the prisoner to any of the evidence offered by the State, and no exception was made to the charge of the Court.

The only exception that appears in the case on appeal is one made to the refusal of his Honor to instruct the jury as follows:    "In no aspect of the case can the jury find the prisoner guilty of murder in the first degree, for the evidence at most amounts to no more than a scintilla."    The duty of

STATE *v.* SMITH.

a Judge on the review of the evidence in a criminal cause,
with a view to discover whether there is any evidence against
the prisoner fit to be submitted to the jury, is very different
from the duty of juror who is to pass upon the weight of
the evidence. There is more than a scintilla of evidence
against the prisoner in this case. That evidence, it is true,
was furnished in the main by the testimony of Thomas Win-
frey, one of the three persons who were engaged in the fight
with the prisoner, and who was badly wounded at the time
Cawthorne was killed by the prisoner. But we can not pass
upon its credibility. That witness testified that the conduct
of himself and his companion was without fault; that the
knife which the prisoner used was not an ordinary knife, but
one something like a butcher's knife, and about eight inches
long; and that the prisoner left his premises and made a sud-
den and unexpected assault with the knife upon Cawthorne
and himself in the public road. Another of the State's wit-
nesses, John O. Ellington, testified that the prisoner stated
to him that he heard these men coming and picked up a knife
he had prepared to kill hogs with next morning, and started
out; that his wife asked him where he was going, and he
answered that he was going to see if he could not stop that
fuss or those boys; that his wife asked him not to go, and
that if he had listened to her he would not have been in this
trouble. The witness further testified that the prisoner told
him he went out to the crib and stopped by the side of it; that
they were shooting off Roman candles in front of the house;
that they stopped; that he walked out, put his hand on one
and asked if it was Mr. Pendergrass, that the one replied
"No," and that he pushed his head back and went to cutting.

The whole evidence in the case is calculated to enlist the
sympathies of any person who might read it from an unpreju-
diced standpoint. The sheriff of the county of Johnston

STATE *v.* SMITH.

(Ellington) testified that the prisoner's general character was "that he was honest, industrious, and truthful, but was violent at times." W. R. Creech testified: "I live about half a mile from where Tom Smith was raised. I have known him for twenty-five years. His character is good." A. W. Peedin testified: "He has been living within three and a quarter miles from me for eighteen or nineteen years. His character is good, except he had a little trouble with Moore and a sanctified preacher. This is all I know against him, except this last offense. He is a hard-working man, and pays his debts." J. C. Collier testified: "I know Tom Smith. I have known him for ten years. I have been seeing him about three times a day for about ten years. I regarded him as a good negro."

Smith had been the superintendent of his Sunday School in the town of Selma for about sixteen years. On the night after Christmas of 1898, he was engaged in distributing gifts to the children from the Christmas tree at the Sunday School celebration. He had been at work all the morning before. At 11 o'clock, the festivities being over, he and his wife left for their home, walking, a short distance in the country. The father and mother of the prisoner, an aged couple, riding in an ox-cart, were just behind, returning to their home also. A short distance out of town the prisoner and his wife passed three persons who wore masks, concealing their faces. They each had a woman's skirt. They had been drinking and had liquor with them. The three masked persons were Charles Lewis Cawthorne, Graham Garner and Thomas Winfrey. During the day they had been discharging fireworks in Selma, and upon being prohibited by the town authorities from continuing this sport, they left the town. One of them (Winfrey) had in his pockets two loaded pistols.

After the prisoner had reached his home he heard the

parties coming in his direction shooting off their fireworks and firing their pistols. Roman candles were discharged into the trees of the yard of the prisoner and near his house, and the maskers threatened to shoot his dog. In front of the prisoner's gate and in the public road, a difficulty occurred between the prisoner and the revelers. Cawthorne was killed and Winfrey dangerously wounded by the prisoner, the weapon used being a large and dangerous knife.

The testimony of the prisoner tended to show justification, certainly not more than manslaughter; while that of Winfrey and Garner and Ellington tended to show premeditation and deliberation on the part of the prisoner.

Upon a consideration of all the evidence, it seems to us that the greater weight was in favor of the prisoner. But the jury decided otherwise, and the law has confided that finding to them.

There was evidence, more than a scintilla, on the part of the State going to show premeditation and deliberation on the part of the prisoner, and that is the only question before us. The credibility of the witnesses and the weight of the evidence were for the jury.

Affirmed.